**EXHIBIT F**

AGREEMENT dated as of July 1, 2006, between Universal Music Enterprises, A Division of UMG Recordings, Inc., 2220 Colorado Avenue, Santa Monica, CA 90404, Attn: UME Finance ("UME"), and Sony BMG Music Entertainment, a Delaware Partnership, 550 Madison Avenue, New York, NY 10022 ("Sony BMG").

WHEREAS, UME and Sony BMG (each, a "Label Party", and collectively, the "Label Parties") would like to establish a reciprocal licensing process to facilitate and expedite the prompt and efficient licensing of sound recording samples from and to one another and/or to their respective recording artists; and

WHEREAS, the Label Parties have agreed that following the full execution of this reciprocal agreement, the only documentation required between the Label Parties or between a Label Party and a Sampling Artist (each, a "Party", and collectively, the "Parties") to evidence a duly authorized sample license shall be a duly executed form letter in the form of Exhibit A attached hereto and made a part hereof (each, a "Short Form License");

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.      Each fully executed Short Form License, when read together with this Agreement, shall constitute the entire agreement between the applicable Parties in connection with the sample license concerned. Each of the following defined terms will have the meaning assigned to such terms in the applicable Short Form License: Licensor, Licensee, Sampled Recording, Sampled Artist, Sampling Artist, New Recording, Advance and Royalty Rate. In the event of any inconsistency between the Short Form License and this Agreement, the terms of the Short Form License shall control.

2.           (a)     Licensor hereby grants to Licensee and/or the Sampling Artist a non-exclusive, non-assignable license to incorporate the Sampled Recording embodying the Sampled Artist's performance in the New Recording embodying the Sampling Artist's performance in the exact manner as the Sampled Recording is incorporated on the copy of the New Recording presented by Licensee to Licensor for its review. Each Short Form License shall continue for the full term of copyright of the New Recording and any extensions and renewals thereof. Licensor hereby grants to Licensee a non-exclusive, non-assignable license to manufacture, distribute, reproduce, transmit, communicate, make available, perform, sell and exploit the Sampled Recording, solely as part of the New Recording, and to authorize the same throughout the world ("Territory"), in all configurations, forms and formats now known or hereafter devised, including, without limitation, records, deliveries and transmissions embodying or reproducing audio alone and audiovisual records, via any channels, platforms and methods now known or hereafter devised, subject to any restriction set forth in the Short Form License. Without limiting the generality of the foregoing, Licensee will have the non-exclusive, non-assignable, limited right to digitize, encode, perform, reproduce,

247386 1 LJW (SMLG 06-395.6(1))



distribute, transmit, communicate, sell and make available the Sampled Recording, solely as embodied in the New Recording, for the purpose of offering the New Recording as (i) a digital download or stream from the World Wide Web portion of the internet through on-line retailers and subscription services to end users for their personal, non-commercial use, in such a format that cannot be redistributed, altered or manipulated in any manner by the end user or any third party (provided however than Licensee shall not be deemed to have breached this agreement in the event that end users use technological methods not made available or promoted by Licensee to redistribute, alter or manipulate the New Recording), or (ii) a ringtone, ringback, mobile download, through radio services or other similar wireless transmissions of the New Recording (each, a "Mobile Exploitation"). Notwithstanding the foregoing, Licensee will not be entitled to exploit or to authorize any third party to exploit a portion of the New Recording ("Segment"), if a disproportionate amount of the Segment concerned consists of the Sampled Recording when compared to the Sampled Recording as a percentage of the entire New Recording, including, without limitation, for purposes of synchronization, Mobile Exploitations and the like. In that regard, the Licensee will use reasonable efforts to avoid any labeling that might confuse the consumer regarding the primary performer on the Segment (i.e., the Sampling Artist must be the primary performer) or the origin of the Segment. Licensor reserves all rights not specifically granted herein or in the Short Form License.

      (b)    Each Label Party shall have the unfettered right to withhold its consent to any request for a sample license from the other Party. This Agreement shall not be deemed to create any obligation on either Label Party to license any sample. Nor shall it preclude either Label Party from bringing an action for copyright infringement, willful or otherwise, against the other Party in connection with the failure of either Party to secure a Short Form License.

      (c)    For the avoidance of doubt, Licensee shall not have the right to license any portion of the New Recording which consists of the Sampled Recording to a third party for use in a derivative work, including, without limitation, as a sample or otherwise.

3.    (a)    In connection with the New Recording, Licensee agrees to pay Licensor the Advance plus the AFM Fee (defined in subparagraph 3(c) below). The Advance will be recoupable from all royalties payable to Licensor hereunder. Royalties payable pursuant to one Short Form License will not be used by either Label Party to recoup advances or other amounts payable in connection with any other Short Form License.

      (b)    Licensee shall remit the Advance to Licensor along with four (4) complete and duly executed original copies of the applicable Short Form License not later than the earlier of the following dates ("Due Date"): (i) thirty (30) days after the date of the Short Form License, or (ii) the date the New Recording is released anywhere in the world (promotionally or commercially). If the Advance is not received by the Due



Date, the Short Form License concerned shall not be effective and shall be deemed void *ab initio* with respect to the New Recording concerned.

(c)  As a material condition of the effectiveness of each sample license, Licensee shall remit to Licensor a non-returnable, one-time, lump sum payment of Four Hundred Dollars ($400.00) to reimburse Licensor for payments it is required to make to the American Federation of Musicians (the "AFM Fee"). That payment will be due on the same date that Licensee pays the Advance. In the event that sales and exploitations of a New Recording require Licensee to make royalty payments of more than Twenty Five Thousand Dollars ($25,000.00), then Licensee shall remit to Licensor additional AFM Fee payments equal to two percent (2%) of the aggregate license fees paid or credited to Licensor in connection with that New Recording, less any AFM Fees previously remitted to Licensor in connection with that New Recording. Licensee's failure to make such additional payments shall be deemed a material breach of this Agreement, and in the event of any such breach, Licensor shall have the right to terminate the Short Form License concerned after thirty (30) days prior written notice to Licensee.

4.     (a)     <u>Royalties.</u>

(1)  Licensee will pay Licensor a royalty on all sales and commercial exploitations of the New Recording as set forth in this Agreement and the Short Form License concerned. On top-line sales of audio-only phonograph records embodying the New Recording distributed for sale in the United States, regardless of configuration, Licensee will pay Licensor a percentage of receipts (i.e., "actual" wholesale) equal to the Royalty Rate. The Royalty Rate will apply without deductions, except that the royalties concerned will be pro-rated based on the actual number of royalty bearing tracks on the record concerned. The Royalty Rate (or Net Receipts Rate, if applicable) would apply to sales of records in the United States and digital downloads in the United States. For purposes of the preceding sentence, digital downloads will include sales of the New Recording by Mobile Exploitation. A royalty will be payable on all wireless transmissions of a Segment, whether or not the Sampled Recording is included in that Segment. Notwithstanding anything to the contrary in the preceding sentence, the Licensee will not be required to pay a royalty hereunder on sales of a distinct version of the New Recording which do not contain any portion of the Sampled Recording.

(2)  On sales and exploitations of a New Recording outside the United States ("Foreign Sales"), the Royalty Rate will be multiplied by a royalty base price equal to the price reported to the Licensee by its foreign affiliate or licensee as the wholesale price, or if none, the foreign affiliate's or licensee's actual receipts from the sale or exploitation concerned. The Royalty Rate on Foreign Sales of the New Recording will be reduced in proportion to any foreign reduction applicable to the Sampling Artist's royalties in the territory concerned. The Licensee will not be required to report the sales or exploitation of a New Recording outside the United



States until the Licensee's affiliate or licensee accounts to the Licensee for such sale or exploitation.

(3) On sales and exploitations of a New Recording anywhere in the Territory for which the Sampling Artist is paid a royalty at a so-called "reduced rate", including, without limitation, mid price reductions, budget reductions, multiple record set reductions, non-normal retail channel reductions and television advertising campaign deductions, the Royalty Rate applicable to such sales will be reduced and adjusted in proportion to the reduction or adjustment in the Sampling Artist's royalty for the sale or exploitation of the New Recording concerned.

(b) <u>Subscription Services/Streams:</u>   The royalty rate applicable to the exploitation of a New Recording in a subscription service or proceeds derived from a stream, will be a percentage of Receipts (defined below) equal to the applicable Net Receipts Rate set forth below, in lieu of any other amount.

| **DIGITAL ROYALTY RATE** | **NET RECEIPTS RATE** |
|---|---|
| 1% | 5% of Artist's Share |
| 2% | 10% of Artist's Share |
| 2.5% | 12.5% of Artist's Share |
| 2.75% | 13.75% of Artist's Share |
| 3% | 15% of Artist's Share |
| 4% | 20% of Artist's Share |
| 5% | 25% of Artist's Share |
| 6% | 30% of Artist's Share |
| 7% | 35% of Artist's Share |
| 8% | 40% of Artist's Share |
| 9% | 45% of Artist's Share |
| 10% | 50% of Artist's Share |

In no event shall the Net Receipts Rate exceed the maximum percentages set forth below. If the Royalty Rate exceeds 10%, then the Maximum Royalty Rate (i.e., 10%) or the Maximum Net Receipts Rate (i.e., 50%) would apply. If the Royalty Rate is not a whole number, then the applicable Net Receipts Rate shall be determined on a proportionate basis in a manner consistent with the conversions set forth above (e.g., see, for illustration purposes, the 2.5% Royalty Rate conversion above). "Receipts" means all monies (including non-returnable advances) earned and actually received by the Licensee in the United States which are specifically and directly attributable to the exploitation of the New Recording concerned.

(c) <u>Audiovisual Records:</u>   The Royalty Rate applicable to the sale or exploitation of audiovisual records and videos embodying a New Recording will be fifty percent (50%) of the Royalty Rate or the Net Receipts Rate set forth above, as applicable. The provisions of subparagraph 4(a) above will also apply with respect to the exploitation of audiovisual records and videos outside the United States and/or at reduced rates. Unless the Short Form Agreement specifically prohibits the commercial exploitation of videos, commercial video rights are included hereunder.

247386                                              4                               LJW (SMLG 06-395.6(1))



(d)     DualDisc:     For purposes of determining the number of royalty bearing tracks on a Dual Disc record, each musical composition will count as a single musical composition irrespective of length, regardless of the number of times such composition appears on the Dual Disc concerned. Although a DualDisc record contains audio components and visual components, for purposes of royalty payment calculations under this Agreement, a DualDisc record will be treated as an audio-only record.

(e)     Accounting Statements:     Itemized statements setting forth in detail the computation of monies payable hereunder and under any Short Form License, together with any applicable payment, shall be sent by Licensee to Licensor on or before the date ninety (90) days after the close of its regular semi-annual accounting periods. Licensee shall maintain books of account concerning the sale, transmission and exploitation of each New Recording. A certified public accountant or attorney, acting on Licensor's behalf, may, at Licensor's sole expense, examine Licensee's books relating to the sale and commercial exploitation of any New Recording (but excluding any of Licensee's books and records relating to the manufacture of phonograph records), only during Licensee's normal business hours at such place where it keep such books and records and upon reasonable written notice, not more than once in any year and not more than once with regard to any statement. The rights granted to Licensor herein shall constitute Licensor's sole and exclusive rights to examine Licensee's books and records with respect to the subject matter hereof.

5.     Notwithstanding anything to the contrary above, Licensee will not grant any "master use" or "synchronization" licenses for the New Recording without Licensor's consent unless such licenses are specifically permitted under the Short Form License. For purposes of the preceding sentence, master use and synchronization licenses shall be deemed to include licenses for television, motion pictures, commercials and advertisements, but shall not include licenses to include the New Recording on multi-artist compilation records, it being understood that such licenses are permitted in all instances. Notwithstanding anything to the contrary above, the Licensor will be entitled to license the New Recording for advertisements promoting the sale of the New Recording. The license fee payable to Licensor in connection with any permitted master use or synchronization license shall be a percentage of Licensee's gross receipts derived from the license of the New Recording equal to the applicable Net Receipts Rate.

6.     Licensee may remix or re-edit the New Recording, provided such re-mix or re-edit is not done in a manner that makes the excerpt of the Sampled Recording incorporated in the New Recording longer or more prominent, and further provided the Sampled Recording is not re-mixed or re-edited in any way.

7.     Licensor makes no grant of rights or representations whatsoever with respect to any musical compositions embodied in the Sampled Recording. Licensee shall be

247386                                    5                              LJW (SMLG 06-395.6(1))



solely responsible for obtaining all necessary publishing and mechanical copyright permissions and licenses.

8.  (a)  Licensee hereby agrees to provide a credit on the inside of the packaging all phonograph records embodying the New Recording in substantially the following form:

"Sampled Recording" by "Sampled Artist" under license from "Licensor"

Either Label Party's inadvertent failure to include such credit on phonograph records in any instance shall not be deemed a material breach of this Agreement, provided that the Label Party concerned remedies the failure concerned on future runs of the applicable materials after receipt of notice of such failure from Licensor.

(b)  Licensee will deliver two (2) compact disc copies of each initial record release embodying the New Recording. If Sony BMG is the Licensor, said recordings shall be shipped to the attention of the Associate Director, Business Affairs, Sony BMG Music Entertainment, 550 Madison Ave., New York, NY 10022. If UME is the Licensor, said recordings shall be shipped to the attention of the Sample License Department, Universal Music Enterprises, 2220 Colorado Avenue, Santa Monica, CA 90404.

9.  (a)  Licensee represents and warrants to Licensor that:

(i)  Licensee will not license, sell or otherwise exploit the New Recording except as permitted under this Agreement and the applicable Short Form License;

(ii)  Licensee will be responsible for and will pay all copyright license fees, mechanical royalties and other fees payable to the copyright proprietors of the musical composition embodied in the New Recording (including, without limitation, the copyright proprietors of the musical composition embodied in the Sampled Recording as embodied in the New Recording);

(iii)  Licensee will be solely responsible for any fund, union or guild payments or any other payments required under any collective bargaining agreement, whether as a result of sales achievements or otherwise, subject to paragraph 3(c); and

(iv)  The phonograph records embodying the New Recording and digital transmissions of the New Recording will be of superior quality and comparable to the first class standards of the record industry, established by major record companies in any market in which such records are sold.

(b)  Licensee shall at all times indemnify and hold harmless Licensor from and against any and all claims, losses, damages, liabilities, costs and expenses, including, without limitation, legal expenses and reasonable counsel fees, arising out of any

247386                                6                         LJW (SMLG 06-395.6(1))



breach or alleged breach by Licensee of any warranty or representation made by Licensee in this agreement, provided the claim concerned has been settled with Licensee's consent or has resulted in a judgment against Licensor. Licensor shall notify Licensee of any action commenced on such a claim. Licensee may participate in the defense of any such claim through counsel of Licensee's selection at Licensee's own expense, but Licensor shall have the right at all times, in Licensor's sole discretion, to retain or resume control of the conduct of the defense. Notwithstanding the foregoing, when the Licensee is a Label Party, Licensee shall have the right at all times, in Licensee's sole discretion, to control the conduct of the defense.

10.     (a) Licensor represents and warrants that it has the full right, power and authority to enter into this Agreement and to grant Licensee all of the rights hereunder. Licensor agrees to pay any and all artist, producer and third party record royalties related to the Sampled Recording which may be due in respect of Licensee's use of the Sampled Recording as part of the New Recording.

(b)     Licensor shall at all times indemnify and hold harmless Licensee and any licensee of Licensee from and against any and all claims, losses, damages, liabilities, costs and expenses, including, without limitation, legal expenses and reasonable counsel fees, arising out of any breach or alleged breach by Licensor of any warranty or representation made by Licensor in this agreement, provided the claim concerned has been settled with Licensor's consent or has resulted in a judgment against Licensee. Licensee shall notify Licensor of any action commenced on such a claim. Licensee may participate in the defense of any such claim through counsel of Licensee's selection at Licensee's own expense, but Licensor shall have the right at all times, in Licensor's sole discretion, to retain or resume control of the conduct of the defense. Pending the resolution of any such claim, Licensee may withhold monies which would otherwise be payable to Licensor under the Short Form License concerned in an amount consistent with such claim. If no action or other proceeding for recovery on such a claim has been commenced within eighteen (18) months after its assertion Licensee shall not continue to withhold monies in connection with that particular claim unless Licensee believes, in Licensee's reasonable judgment, that such a proceeding may be instituted notwithstanding the passage of that time.

11.     THIS AGREEMENT HAS BEEN ENTERED INTO IN THE STATE OF NEW YORK, AND THE VALIDITY, INTERPRETATION AND LEGAL EFFECT OF THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS ENTERED INTO AND PERFORMED ENTIRELY WITHIN THE STATE OF NEW YORK (WITHOUT GIVING EFFECT TO ANY CONFLICT OF LAW PRINCIPLES UNDER NEW YORK LAW). THE NEW YORK COURTS (STATE AND FEDERAL), SHALL HAVE SOLE JURISDICTION OF ANY CONTROVERSIES REGARDING THIS AGREEMENT; ANY ACTION OR OTHER PROCEEDING WHICH INVOLVES SUCH A CONTROVERSY SHALL BE BROUGHT IN THOSE COURTS IN NEW YORK COUNTY AND NOT ELSEWHERE. THE PARTIES WAIVE ANY AND ALL OBJECTIONS TO VENUE IN THOSE COURTS AND HEREBY SUBMIT TO THE JURISDICTION OF THOSE COURTS. ANY PROCESS IN



ANY SUCH ACTION OR PROCEEDING MAY, AMONG OTHER METHODS, BE SERVED UPON EITHER PARTY BY DELIVERING IT OR MAILING IT, BY REGISTERED OR CERTIFIED MAIL, DIRECTED TO THE ADDRESS FIRST ABOVE WRITTEN. ANY SUCH PROCESS MAY, AMONG OTHER METHODS, BE SERVED UPON EITHER PARTY BY DELIVERING THE PROCESS OR MAILING IT BY REGISTERED OR CERTIFIED MAIL, DIRECTED TO THE ADDRESS FIRST ABOVE WRITTEN. ANY SUCH DELIVERY OR MAIL SERVICE SHALL BE DEEMED TO HAVE THE SAME FORCE AND EFFECT AS PERSONAL SERVICE WITHIN THE STATE OF NEW YORK.

12. The Sampled Recording and all copyrights in and to the Sampled Recording will remain the sole and exclusive property of Licensor subject to the rights of Licensee under this Agreement.

13. All notices required to be given to a Party hereto must be sent in writing to the address for the Party first mentioned herein, or to such new address if changed as described below, in order to be effective. All royalties and royalty statements will be sent to Licensor at Licensor's address first mentioned herein. Each Party may change its respective address hereunder by notice in writing to the other. All notices sent under this agreement must be in writing and, except for royalty statements, may be sent only by personal delivery, registered or certified mail (return receipt requested), or by overnight air express (or courier shipment if outside the United States) if such service actually provides proof of mailing. The day of mailing of any such notice will be deemed the date of the giving thereof (except notices of change of address, the date of which will be the date of receipt by the receiving Party). Facsimile transmissions will not constitute valid notices hereunder, whether or not actually received. All notices to Licensor must be sent to the attention of the Senior Vice President, Business Affairs.

14. This agreement sets forth the entire agreement between the Parties with respect to the subject matter hereof and no modification, amendment, waiver, termination or discharge or any provisions hereof will be binding upon any Party unless confirmed by a written instrument executed by such Party. No waiver of any provision of or default under this agreement will affect any Party's right thereafter to enforce such provisions or to exercise any right or remedy in the event of any other default whether or not similar. This agreement will become effective only when executed by an authorized signatory of the Licensee and an authorized signatory on behalf of the Licensor.

15. Licensee will not have the right to assign, sublicense or otherwise transfer or convey this agreement or any right hereunder without the prior written consent of the Licensor, such consent to be in the Licensor's sole discretion. Notwithstanding the foregoing, either Label Party may assign this agreement to any subsidiary or affiliated or controlling corporation or to any entity owning or acquiring a substantial portion of the stock or assets of such Label Party or with whom such Label Party may merge.

16. In addition to any other rights of termination which the Licensor may have, Licensor shall have the right to terminate a Short Form License and all of the Licensee's

rights thereunder and hereunder with respect to such Short Form License, in the event (i) Licensee shall breach any material provision of the Short Form Agreement, including the terms of this agreement; or (ii) Licensee shall attempt to sell, mortgage or pledge the Sampled Recording without the Licensor's prior written consent.

17. No failure by any Party to perform its obligations hereunder shall be deemed a breach of this agreement until the Party alleging breach has given the alleged breaching Party written notice of such failure and such failure has not been cured within thirty (30) days from the date of said notice. The foregoing cure period will not apply to Licensee's warranties hereunder, to breaches incapable of being cured, where a specific cure period is provided herein, or to an application for injunctive relief.

**Ron Wilcox**
**Executive Vice President**
**Chief Business and Legal Affairs Officer**
**Sony BMG Music Entertainment**

SONY BMG MUSIC ENTERTAINMENT

By: _____

UNIVERSAL MUSIC ENTERPRISES,
A Division of UMG Recordings, Inc.

By: _____

247386     9     LJW (SMLG 06-395.6(1))



# EXHIBIT A
## SHORT FORM SAMPLE LICENSE

Date: _____

Licensor: _____

Licensee: _____

Sampled Artist: _____

Sampling Artist: _____

Sampled Recording: _____

New Recording: _____

Licensee Album Title: _____

Licensee Release Date: _____

Advance: _____

Royalty Rate: _____

Synchronization:     Permitted_____ Prohibited_____

Commercial Video:    Permitted_____ Prohibited_____

Other Restrictions: _____

The offer of a license and the proposed fee for such license as stated above are valid for thirty (30) days from the date of this Short Form License. If you have not complied with the conditions stated herein within this thirty (30) day period, this offer will be considered invalid. The offer is not a license. No license is granted until we receive the executed copies of this Short Form License and payment required by its terms. This Short Form License incorporates by reference all of the provisions of the reciprocal license agreement between Licensee and Licensor, a copy of which is attached hereto as Exhibit A (the "Agreement"). Sampling Artist acknowledges that he or she has read the Agreement and hereby assumes responsibility for all obligations of Licensee under the Agreement. This Agreement shall constitute an irrevocable direction from the Sampling Artist to Licensee to honor the terms of this Short Form License and to deduct any and all sums hereunder from royalties otherwise payable to Sampling Artist.


_____     _____
LICENSOR                            SAMPLING ARTIST

Licensee hereby acknowledges receipt of the Sampling Artist's irrevocable direction and agrees to honor the terms of this Short Form Agreement.


_____
LICENSEE

247386                              10                    LJW (SMLG 06-395.6(1))